[No. 3,056.]

RICHARD JONES *v.* H. MARKS AND S. HARRINGTON.

CONSTRUCTION OF POWER OF ATTORNEY.—A power of attorney in which the principal authorizes the agent to make contracts, to settle outstanding debts, and generally to do all things that concern his interest in any way, real and personal, to use the principal's name to release others, to bind the principal as he may deem proper and expedient, and making the agent his general attorney and agent, and ratifying and confirming

whatever the attorney may do by virtue of the power, anthorizes the attorney to execute a lease of the principal's real estate for a term exceeding one year, and to execute any instrument affecting the real estate of the principal, unless, it may be, a conveyance of it.

RECORD AND POWERS OF ATTORNEY.—By the Act of 1850 concerning conveyances, powers of attorney which do not authorize the agent to make an absolute conveyance of real estate, but which authorize him to make a lease of the principal's land for a term exceeding one year, or to make any other instrument affecting the real estate of the principal, except executory contracts for the sale thereof, are entitled to record.

A LEASE A CONVEYANCE.—A lease for a term exceeding one year is a "conveyance" within the definition of that word, as used in Sections 27 and 36 of the recording Act of 1850.

CERTIFIED COPY OF RECORD AS EVIDENCE.—A certified copy of the record of a power of attorney, which is entitled to record, is admissible in evidence.

VERBAL SALE OF LAND WHICH GIVES PURCHASER AN EQUITABLE TITLE.—If an attorney in fact, who is not authorized by the power to execute an absolute deed of the land of his principal, but who is authorized by the power to execute a contract for the sale of the land, sells the land, receives the purchase money, places the purchaser in possession, and executes an absolute deed for it, the transaction amounts to a valid verbal sale, and creates a valid equitable title in the purchaser and his successors in interest.

POSSESSION OF LAND, NOTICE OF EQUITABLE TITLE.—The actual possession of land, by one who has acquired an equitable title, is notice of such title to subsequent purchasers from the one holding the legal title.

APPEAL from the District Court, Sixth Judicial District, County of Sacramento.

John A. Sutter was the grantee from the Mexican government of the land comprising the city of Sacramento, and before the organization of the State government of California, made the plat of the city, dividing it into lots and blocks. Schoolcraft was his attorney in fact, and kept a record of sales made before the passage of the recording Act for this State, which book of records was afterward deposited in the Recorder's office. The Act of May 18, 1853, referred to in the opinion, was passed for the purpose of validating these records kept by Schoolcraft.

On the 16th day of November, 1849, Schoolcraft sold the demanded premises to Clement W. Coote and R. A. Pearis, who entered into possession; and Joseph M. Frey, by mesne conveyances, held, at the time of the commencement

of this action, the title of Coote and Pearis. The possession had been delivered with these conveyances. Defendant Harrington was the tenant of Frey. The defendant had no evidence of the deed from Sutter by Schoolcraft to Coote and Pearis, except the record thereof in the same book in which the power was recorded.

The plaintiff's claim to the premises was based on a deed from John A. Sutter to his son, John A. Sutter, Jr., dated May 7th, 1850, which title had, by mesne conveyances, vested in him.

The other facts are stated in the opinion, and in *Billings* v. *Morrow*, 7 Cal. 171.

*A. P. Catlin* and *Edgerton & Smith*, for the Appellant, argued that, under the act of 1850, concerning conveyances, an instrument was not entitled to record unless it was a conveyance, or a letter of attorney giving power to execute such conveyance; and that, as the power of attorney in this case did not authorize the execution of a conveyance (*Billings* v. *Morrow*, 7 Cal. 171), it was not entitled to record. That, even if the instrument authorized Schoolcraft to execute a contract to convey, still, as executory contracts could not be recorded, the power to make them could not be recorded. They also argued that, even if the power was entitled to record, and therefore properly in evidence, and if the deed given under it, being void at law, was still valid as an executory contract to convey, its record could have no greater force than the record of an executory contract, which was excluded from registration, and therefore the record of the deed was no evidence of its execution; and there was no evidence of the execution of the deed from Schoolcraft to Coote and Pearis.

*P. Dunlap*, for Respondent, argued that the power contained authority to make a contract for the sale of the lot; and the agent having sold, received the money, and put the purchaser in possession, the respondent had a perfect equity, which entitled him to be protected in the possession, as the transaction was equivalent to a contract to con-

vey. He also argued that the power was entitled to a record, under the act of May, 1853, concerning the records kept by Schoolcraft.

By the Court, CROCKETT, J.:

The action is ejectment for a lot in the city of Sacramento, in which a judgment was entered for the defendant, from which, and from an order denying his motion for a new trial, the plaintiff appealed. At the trial the defendant offered, and the Court admitted in evidence, against the objection of the plaintiff, a certified copy from the "Schoolcraft Records" of a power of attorney from Sutter to Schoolcraft, dated July 28th, 1849. The power of attorney authorized Schoolcraft, for and in the name of Sutter, to superintend his real and personal estate, "to make contracts," to settle outstanding debts, and generally to do all things that concerned his interest in any way, real and personal, giving his said attorney full power to use his name to release others, to bind Sutter as he might deem proper and expedient, and concluding in these words: "Hereby making the said Schoolcraft my general attorney and agent, and by these presents ratifying whatever my said attorney may do by virtue of this power." This power was recorded in the books of record kept by Schoolcraft prior to the organization of the State Government, and the certified copy admitted in evidence was taken from these records. For the purpose of validating these records, it was provided by the Act of May 18th, 1853 (Statutes 1853, p. 227), that "the books of record used by Henry A. Schoolcraft for the record of deeds and other instruments in writing, deposited in the Recorder's office of said county, shall, on and after the 1st day of June, 1853, be deemed legal records, and all instruments therein recorded shall have the same force and effect in law as if duly recorded in the appropriate books of record of said county, at 12 o'clock M. of the said 1st day of June; and all copies thereof duly certified or proved shall thereafter have the same force and effect as other copies of records of said office."

The next section provides that "the record of all deeds and other instruments required by law to be recorded, and which are recorded in any of said books, shall, after 12 o'clock M. of said 1st day of June, as in other cases provided by law, be constructive notice to all persons of the contents thereof."

The plaintiff contends that the purpose of the act was to validate the record of only such instruments, as at the time of the passage of the act, were, by law, required to be recorded; and he claims that the power of attorney from Sutter to Schoolcraft does not come within that category; and, consequently, that a certified copy of it was not admissible in evidence. . Without discussing the first branch of the proposition, and assuming for the purposes of this decision that it is correct, we proceed to inquire whether the power of attorney was entitled to record as the law stood at the time of the passage of the curative act.

By section 27 of the act of 1850, concerning conveyances (Statutes 1850, p. 251), it is provided that "every power of attorney or other instrument in writing containing the power to convey any real estate, as agent or attorney for the owner thereof, or to execute as agent or attorney for another any conveyance whereby any real estate is conveyed or may be affected, shall be acknowledged or proved and certified and recorded as other conveyances whereby real estate is conveyed or affected are required to be acknowledged or proved, certified and recorded."

Section 36 of the same Act provides that "the term 'conveyance' as used in this Act shall be construed to embrace every instrument in writing by which any real estate or interest in real estate is created, aliened, mortgaged, or assigned, except wills, leases for a term not exceeding one year, executory contracts for the sale or purchase of lands, and powers of attorney." We have here a definition of the word "conveyance" as used in Section 27, and find that it includes . every instrument in writing by which any interest in real estate is created or aliened, except wills, leases for a term not exceeding one year, executory contracts for the sale or purchase of land, and powers of attorney.

We are, therefore, to read Section 27 as though it had, in terms, provided for recording every power of attorney, in which the agent was authorized to execute an "instrument in writing, by which any real estate, or interest in real estate, is created or aliened;" or, as further provided in Section 27, by which it "may be affected" except wills, leases for a term not exceeding one year, executory contracts for sale or purchase of land, and powers of attorney. It remains to be considered, whether, tested by this construction of these sections, the power of attorney from Sutter to Schoolcraft was entitled to record. This particular instrument was before this Court in *Billings* v. *Morrow*, 7 Cal. 171, and again in *DeRutte* v. *Muldrow*, 16 id. 505.

In the former case it was decided that the power did not authorize Schoolcraft to convey real estate; and in the latter, that it did authorize him to bind Sutter in an executory contract for the sale of land. If we accept both decisions as correct, it results that whilst Schoolcraft had no authority to convey the real estate of his principal, he had authority to bind him in an executory contract of sale. But, as we have already seen, a power of attorney, which only authorized the agent to bind his principal in an executory contract of sale, was not entitled to record under Section 27 of the recording Act. If, therefore, Schoolcraft had no authority to convey Sutter's real estate, the power of attorney was not entitled to record, unless, in addition to the power to enter into an executory contract of sale, it also authorized him to execute instruments of a different character, whereby an "interest" in the real estate might be "created," or "aliened," or "affected." But we think the power is broad enough in its terms, to have authorized the execution of any instrument affecting the real estate, unless, it may be, a conveyance of it. He might, for example, have released a title bond, held by Sutter, for the conveyance of real estate, or have executed a lease for a term exceeding one year. It is true, a lease of this character would come within the definition of a "conveyance," as given in Section 36 of the Recording Act above quoted; and, as we have seen, it was decided in *Billings* v. *Morrow* that

Schoolcraft had no authority to "convey" the real estate. But, in that case, the conveyance relied upon was an absolute deed in fee; and the point decided was that Schoolcraft had no authority to execute an instrument of that character. But we entertain no doubt that he had authority to execute a lease for a term of years. This would not have been an executory contract for the sale of land, nor a "conveyance," within the ruling in *Billings* v. *Morrow*; and yet it would have been a conveyance, within the definition of that term, as used in Sections 27 and 36 of the Recording Act, and would have created an interest in real estate.

If these views be correct, the power of attorney was entitled to record, and the certified copy was properly admitted in evidence.

It appeared at the trial, that Schoolcraft, as the agent and attorney of Sutter, sold the premises in controversy to Coote & Pearis (under whom the defendant deraigns title), for the price of $1,200, which was paid to Schoolcraft at the time of the sale; and he thereupon, in Sutter's name, executed to the purchasers an absolute deed in fee, and let them into possession; and for more than twenty years they and their successors in interest have continued in the actual occupation of the premises. If, under the ruling in *Billings* v. *Morrow*, the deed be deemed a nullity, there was, nevertheless, a valid verbal sale, accompanied by a payment of the purchase money and a delivery of possession, which has ever since continued. This created a valid, equitable title in Coote & Pearis and their successors in interest, of which equity the actual possession was notice to subsequent purchasers. We deem it unnecessary to notice the other points discussed by counsel.

Judgment and order affirmed.